Your argument in the United States v. Collins, Mr. Byrne. Good morning, your honors. May it please the court. My name is Jonathan Byrne. I'm here on behalf of the defendant, in this case below, Dwaine Collins. The main issue in this case is whether an illiterate man told that his time to register as a sex offender has expired by a judge who just told him the importance of following a judge's orders can be said to have knowingly failed to register under the federal sex offender registration law. The government failed to prove that, and Mr. Collins' conviction should be reversed. Mr. Byrne, can I just tell you at the outset that I have a certain amount of sympathy with your argument. I think the difficulty that you have, as far as I'm concerned, is that we had a fact finder make a finding here. The district court was there and made the finding. Yes, your honor. And then, so you're not here, in first instance, making this case. Yes, your honor. That is my problem with your argument. Just so you might bear that in mind, if you have anything to address. Certainly. Even with a bench trial, the standard of review is still de novo on a sufficiency evidence, although we have to take the evidence in the light most favorable to the government, unfortunately. But in this case, I still think we can overcome that hurdle, because we're dealing with a situation that's really different from most of the other cases that have involved sufficiency challenges or due process challenges to SORNA convictions. Because in those cases, cases like Gould, the defendants were clearly under an obligation to register in some state in addition to under the federal scheme. In fact, in Gould, I think the defendant admitted he had an obligation to register in Maryland. In this case, the district court found correctly that the government didn't prove that Mr. Collins had a duty to register in North Carolina, which is the state where he was originally convicted, or Ohio or West Virginia, which are the two states he's traveled to since. So the only scheme he could have failed to register under is SORNA itself. There isn't the backstop of the secondary state scheme. When we get into the record and the evidence . . . I think under the statutes, whether there's any knowing failure to register under any scheme in any place. I think that's correct, Your Honor. That's what the district court said. It has to be proven that he had to register under some scheme. But in cases like Gould and cases from the other circuits, there were both the SORNA scheme and the state scheme that were operative with regard to that defendant. Mr. Collins' obligations to register under any of the states where he had traveled had expired by the time that's alleged in the indictment. So he couldn't have knowingly failed to register under those schemes because he was under no duty to register under those schemes, which only leaves SORNA as the basis for his knowing failure to register. When you get down to the fact that he took an alias to hide his identity and to avoid detection, and that's not a good fact for you? Well, Your Honor, two things about that. Firstly, since we're talking about what the district court found, it's important to note the district court did not rely on that fact in convicting Mr. Collins. Secondly . . . The district judge didn't have to tip down every fact he relies on. I mean, we take the evidence in the light most favorable to the government. Didn't the evidence indicate that he had adopted an alias? Yes, Your Honor, but in this case, it's not really an alias. He was . . . his mother and father had different last names. They were not married when he was born. The two names he has used over the years reflect his father's last name and his mother's last name. He was convicted in North Carolina with both names on the indictment. I'd put forth that if someone was going to create an alias to escape sex offender registration, he would do a better job of it than using one on the original indictment under which he was convicted. And I think that's why the district court didn't mention it in its opinion, convicting Mr. Collins. Of course, another unique aspect of this case is the Ohio proceeding that occurred in 2011, where the Ohio judge, Sue Esponte, took it upon itself to inform Mr. Collins about this change in Ohio law about the registration terms. And the judge first said, it's important to follow instructions that judges tell you. I think we all agree on that. She said, that's why you're in county jail, because you failed to do what a judge told you. And then the judge has a discussion with the prosecutor in which they all agree Mr. Collins' term of registration was 10 years and that term was over. So when he returned to West Virginia, he didn't have any idea that he was under any obligation to register. He had been told that your 10-year term is up and that's all you have to do. And the district court and the government, to a certain extent, tried to rely on Poole, this court's decision, that Mr. Collins was under some idea that he needed to seek clarification as to whether he was under an obligation to register under SORNA. But it's important to note that in Poole, this court said, not only do you have to perhaps have an idea that you need to clarify something, you must deliberately seek to avoid confirming that suspicion. And we just don't have any evidence here that he was deliberately trying to avoid. It all comes down to the question of knowingly in the mens re and whether he knowingly failed to register. Wouldn't that be a question of fact subject to clear error review? Well, I mean, that is the ultimate question as to whether there is evidence sufficient to sustain the conviction. There's no argument on other elements of the offense. That's the only fact there is. But the standard of review for the… Your argument is that a fact finder could not find that he knowingly failed to register? A reasonable fact finder could not find that? And even in view of the alias, even in view that he said, well, I didn't register, it was because I was afraid members of my complex would find out? With due respect, Your Honor, he didn't say he didn't register because of that. After he was arrested and after it had become known to the people in his apartment complex that he was a sex offender because he'd been arrested by U.S. Marshals, he expressed legitimate fear for himself. Fear for the registration? Yes, but his expression of fear for himself based on prior experience of having been attacked for being a sex offender and concern for his girlfriend that she would suffer because of this as well came after… I understand, and I find that a sympathetic argument, but the question is would we be gutting the statute because every sex offender could say, if I registered, I was fearful and that people would not, in the neighborhood or the community, would not react well to that. And if we adopt and accept your rationale, that really is pretty far reaching in terms of what Congress was trying to accomplish? Well, Your Honor, that's not the rationale I'm advancing. I thought it was. No, Your Honor, he did not say I didn't register because I'm afraid this has happened. He said after he was arrested, now that everyone knows I am afraid this might happen. That is not indicative of intent in the past. It's a prospective concern. I think another statement that he made, didn't he say to one of the officers, I'm a sex offender that's supposed to be registered or something like that, a non-registered sex offender? At least that's what the officer testified to, so the district judge could consider that in the mix of evidence. Your Honor, I have to go back and look the record. Well, I don't have it exactly right. Remember the conversation he has with the officer? I remember that he had a conversation with the officer. Yes, and you don't remember anything that is remotely like that? I'm drawing a blank right now, Your Honor. But certainly after I sit down, I'll go through the joint appendix and see if I can find it. When I first read this case, I made myself a note about this. Maybe I have it paraphrased there a little better. A marshal quoting the defendant who didn't testify said that the defendant said he was an unregistered sex offender. You don't remember that statement? I do not, Your Honor. JA 115? 115. You would agree with me if it's there. If it's there, absolutely. Okay. Can I ask you a question about the sentence? Yes, Your Honor. As I understand it, both the government and the defense agreed that a five-year term of supervised release was sufficient. Yes, Your Honor. That's correct. But the district court imposed a ten-year term of supervised release. Yes, Your Honor. And the ten-year term is permitted by the statute. Correct. The statute allows it as a five-year minimum up to life. So you have no argument that this is beyond the statute? No. So your sole argument is that this is unreasonable? Yes, Your Honor. And I guess your unreasonableness argument gains some legs from the fact that the government was willing to say that five years was sufficient. Yes, Your Honor. So that it would be sufficient to satisfy the purposes under the guidelines of the statute? Yes, Your Honor. All right. I just wanted to be sure I understood where you were there. Yes, I think particularly when you look at the congressional record and the history of the act that created the five-year to life term, there was a concern of particular offenders, sex offenders, who were recidivists and presented problems that they thought were going to require longer supervision than traditionally existed under supervised release. And in Mr. Collins' case, aside from his 1998 conviction, he hasn't had any other sex-related offenses. He has an extensive criminal record. We can't get around from that, but it's not sexual. So he doesn't appear to present the risks that would otherwise justify a long sentence. And, of course, if he had a five-year term— You can't contest him for 30 months. Well, Your Honor, we sort of can test the whole ball of wax. Well, let me ask you, isn't the recommended guidelines supervised release range actually what they call a single point or five years? There's actually a lot of confusion as to what the recommended sentence is under the guidelines for the supervised release term. Some courts have said five years. Some courts have said life. I don't think the guidelines provide any real effective guidance here, particularly when the statute was designed to give district judges great discretion in determining what the appropriate supervised release term was. I had the same problem. That's why I asked you about it. I thought the DOJ had intervened and issued some guidance on this issue. Am I right? The DOJ has a position, Your Honor, yes. I'm not certain that's the correct one or that it agrees with the Sentencing Commission or what courts or probation offices say. What is the position? Is it a secret? Of the DOJ? Yeah. I would assume it's the five-year position, yes, that you mentioned, yes. But you think it's not the position of the Sentencing Commission or Congress? Speak to me. It's one of those situations where the guidelines are not particularly well written in that area. It's one of those areas, supervised release terms, I don't think the Sentencing Commission gave a lot of. Doesn't it come down to whether you, I mean, a lot of these sentences are keyed to whether something is a sex offense. Correct. So that there's, I guess there's a debate about whether failure to register should be classified as a sex offense. And depending on how you answer that question, you get very different, you go a very different route. If you say that it's not a sex offense, then you probably have the guidelines recommendation be just a five-year. Because that's a mandatory minimum, I guess, and it just becomes five years. But if you say it is a sex offense, then the supervised release range goes from five years to life. So it's all, it's in part a question of how you categorize it. Yes, I think that's right, because I think this is one of those situations where the statute creating the five to life lists specific sections of the statute that trigger it for convictions, but the guidelines use the more generic term. I thought the DOJ position was that a failure to register was not a sex offense. On that, I'm not certain, Your Honor. Okay, well maybe the government can enlighten us on that. Hopefully. Thank you. Ms. Harrell, let's hear from you. Ms. Harrell, would you mind addressing that argument sometime, or that thought sometime in your argument? I will address it first, Your Honor. And while you're at it, in December, you took, a position was taken by your office or compatriot in the briefs that they conceded the issue of the five-year single point. Why aren't you doing it today? Actually, Your Honor, the government is taking that position today. The government would agree with the reasoning set forth in the Seventh Circuit case of Goodwin, that a SORNA violation is not a sex offense, and therefore the correct supervised release guideline should have been a single point of five years. Thank you. However, this was not objected to by defense counsel at sentencing, and the review for that error should therefore be plain error. And the incorrect calculation of that guideline does not meet that standard. It would meet the standard that it is, in fact, error, and that it is plain error. However, it fails to demonstrate that that error affected the substantial rights of the defendant. What we're really talking about here is the supervised release portion of the sentence. We're not talking about the 30 months, really. What is the reasoning behind the DOJ's main justice's decision not to characterize the failure to register as a sex offense? I believe it looked at the language in the statute and determined that when sex offense was being determined, it actually should have excluded this act. It does not involve an actual individual. It is a failure to register as opposed to a sex offense. So the failure to register was not in and of itself a sex offense. All right. So that puts us, then, probably at the guideline range of just five, doesn't it? Yes. It would be a single point of five years as the guideline. Single five years. Well, now, so if the district court had imposed the 10-year period, it would have to be as an upward variance, wouldn't it? Yes, Your Honor. OK. And did the district court, in essence, what makes you think that this was intended as an upward variance? Or that it could be justified as an upward variance? Your Honor, the court put on the record a number of reasons that he was concerned about the defendant's future behavior. Despite the fact that the United States and the defendant recommended five years, the court was concerned with the extensive criminal history of the defendant. He felt confident that upon release, the defendant would return to a life of crime, that he would continue to engage in criminal activity, and therefore he believed that a lengthier term of supervised release was appropriate. Can I ask you, did the government reveal this procedure or conclusion that ALJ had come to? I mean, I understand that you said five years was appropriate, but did you say, I'll discuss this and this is the government's position around the country or anything like that to the district judge? No, Your Honor. That was a failure of the government on that point. So when saying it's plain error, it's sort of, it's not that you invited the error. I'm not even suggesting that, but I'm not sure that the district court had sort of the full, you know, what was fully in front of it or should have been in front of it when it made its determination. Would you agree with that? I would agree that I had not put on the record the DOJ position. And where is the DOJ position found? It's not in any official guidance. It's an informal policy. There's no rights conferred. There's no memo that you can show me or anything like that? But it does seem in cases. Is there a memo or something? I believe there might have been email. All right. But it does seem in cases around the country, as far as I can tell, that DOJ is adhering to this position. And there are other circuit cases that indicate the failure to register is not a sex offense. So that still leaves the district court room for an upward variance in the case that you're talking about that could provide need to, and I suppose it's upward variance. Could the upward variance be on a basis unrelated to the failure to register offense? Could the upward variance be, as a general matter, we need a longer term of supervised release to protect against the criminal record here? Just general concerns about deterrence. Yes, Your Honor. The factors that can be considered in supervised release do include things such as the nature and characteristics of the defendant, the history, and . . . So would we be able to consider all the 3553A factors in determining the term of supervised release and not just something connected to the failure to register? Yes, except for the one 3553A factor, which I am not remembering the exact subsection B2 perhaps. The defendant raises that specific point in his brief, but that is excluded from supervised release determinations. But all the other 3553A factors are eligible for consideration in determining what an appropriate term of supervised release would be. Ms. Harreld, I admire your candor in originally saying that you So even though the district court could have departed, the government doesn't maintain here that that's what happened. The government concedes that there just was error. There was error in the calculation of the guidelines. However, under the . . . I didn't take your position to be there was error and it was harmless. I thought your position was it was error and it was not preserved, so we have to look for a plain error. Correct. So you're not making a claim that there was, in fact, a departure here? Because that's not what . . . this doesn't look to me like a departure. Does it look to you like one? I would argue that it is a variance. A variance? You think that that's what . . . I hadn't understood that from the very first thing that you said in response to my question. I thought you had said, yes, there's error, but it's not plain. The United States is of the position that the calculation of the guideline was plain error. The plain error review standard has four prongs that go beyond that, and with the third and fourth prong, the defendant would fail to meet that burden, the third prong being that it affects the substantial rights of the defendant, and that is a burden that's placed on the defendant. The United States does not believe that that has been met, and the fourth prong being that it seriously affects the fairness, integrity, or public reputation of judicial proceedings, which, again, the United States does not believe that standard has been met and, therefore, under plain error, this would not be something that needs to be reversed, particularly as there are sufficient grounds on the record to support an upward variance to the ten years, which is still a statutorily permissible term of supervised release. But most of that discussion by the district judge about his background related to the guideline range, he had a range of 24 to 30 months, and the discussion surrounded whether it would be 24 or 30. That's pretty much where that discussion took place, isn't it? Within the sentencing hearing, the primary discussion was in the course of determining the actual sentence of incarceration, but all of that can be seen as a viewpoint of the court. I believe he did make a brief reference to that when determining the term of supervised release, but, yes, the primary discussion was in determining the actual period of incarceration. However, the court is not required to mechanically tick off for each thing each of the grounds, and he did make findings regarding his concerns, or he set forth his concerns regarding the defendant's recidivism, which would support a lengthier term of supervised release. Well, in the Goodwin case, that court made an explicit holding that in a situation like this, it did affect his substantial rights, didn't it? Well, your Honor, the United States, in this situation, would find that that is not met, regardless of the facts of Goodwin. That is a burden placed on the defendant, and the defendant has not met that burden of demonstrating that this affected his substantial rights, and the United States does not believe that a guideline determination of five years in this case would have affected the court's determination of a 10-year term of supervised release. The court already went against the recommendation of both the government and defense counsel, and that, to the United States, would indicate that his determination was based upon his concerns beyond any guideline calculation or argument by the parties. Both the government and the defense counsel said that five years would be sufficient. Yes, Your Honor. And the district court said, no, I want 10. And that's where you get the idea that the district court really did intend this as a variance and a fact. Yes, Your Honor. The district court didn't use the word variance. It did not, Your Honor, and that would, in part, the United States believes That's often a signal of what a court is doing, what it says. Well, based upon its finding that the guidelines were up to life, the court would not have officially viewed it as a variance to put that specifically on the record. So that seems to indicate it wasn't a variance in the minds of the district court, because you said there was no need for a variance in its view of the law, which we now think is error. Yes, Your Honor. Thanks. But the United States believes that if it had been properly calculated, the court would have indicated a variance based upon the discussions in the court. To turn to the element, the knowledge element in the case, the United States does not believe that the defendant has met the very high burden of showing that any rational trier fact could not have found that that element had met, or rather that they have to disprove that any rational trier fact could have found that the knowledge element was met. Based upon the theory set forth in Poole that the knowledge element can be met by demonstrating that the defendant was aware of a high probability of a fact or circumstances, in this case the duty to register, and deliberately avoided confirming that, the United States believes there was ample evidence to prove knowledge under that theory. Specifically, the key piece of evidence the United States would point to is JA44, which is a document that was signed by the defendant, and it was acknowledged in the record that it was signed by the member of law enforcement who indicated that he had explained it to the defendant and that the defendant understood the requirements. But that document specifically stated that within three days of moving to Parkersburg, West Virginia, he was to register. Regardless of the proceedings in Ohio, referring to Ohio law, just as the district court found, that has no impact on his registration requirements in West Virginia. The defendant was familiar with the fact that different states have different registration requirements, and he was specifically made aware that moving to Parkersburg would trigger his duty to register. He also behaved in a manner consistent with demonstrating that he had knowledge. He used an alias. When he was confronted by his landlord about that alias, when the landlord asked him why the name had changed on his rent check, the defendant didn't say, oh, well, Dwayne Collins is my legal name. He said it was a mistake. And a defendant can only have one legal name, regardless of the fact that Klein is his mother's name. He only has one legal name. Cases are often charged with an alias, whether that is an alias that is based upon some fact related to the defendant's mother, or whether that alias is simply a street name. None of those constitute a legal name. And his use of a name other than his legal name constitutes the use of an alias to hide his identity. And it's also consistent that he did not register in West Virginia for the nine years he had been living there from 2002 to 2011. That period of time, he clearly was aware of his registration requirements. In 2001, he had signed notice that he had to update his registration by 2002. And that was the reason he was incarcerated in 2011, which it was for failing to register and update his registration in 2002. This demonstrates a specific intent by the defendant to avoid registration requirements. And his statements to law enforcement and the U.S. Marshals indicate that he was, in fact, had a specific concern. Can I come back? I think we all understand the knowingly part of this. I'm interested, coming back for a minute, to the plain error. Would there have been any reason to object when both the government and the defense counsel were saying that five years of supervised release was sufficient? I mean, would there have been any reason for the counsel to lodge an objection under those circumstances where you're in agreement with the defender? I believe there would have been an obligation to object to the calculation of the guidelines itself. The United States and the defense counsel can agree to a specific sentence, and that could be below. As a practical matter, if you're defense counsel and you've got the government agreeing with you that it was a five-year supervised release term, you might expect as a practical matter the district court might adopt that suggestion. And maybe it doesn't excuse altogether the failure to object for just the reasons you've said. You could have objected to the guidelines calculation. But on the other hand, does it make the lack of an objection less egregious where there's agreement between the two sides? There had been no formal agreement. The government did represent to the court that the five years was sufficient, did it not? Yes, Your Honor, the United States did. But I believe that actually took place after the guidelines had been calculated. I do not recall exactly, but based upon typical procedure with that particular judge, the guidelines are calculated before argument is made for purposes of determining what is appropriate. So the district court would have made the calculation of five years to life as the supervised release guideline. There was no objection at that point? There was no objection at that point, and it was following that, I believe, that the United States recommended a five-year term. In fact, during our original arguments, both sides failed to address supervised release at all. And before imposing the term of supervised release, the court raised the issue. If the government had failed to recommend a five-year term, do you think that it was still possible to lodge objection at that point, though, wasn't it? You say if the government's not going to recommend five years, I have a real question here about how the guidelines are calculated. I mean, he still could have lodged an objection after that, couldn't he? I believe he probably could have lodged an objection at any point during the proceedings. The defense failed to raise that argument at any point in time. I mean, I guess what I'm sort of thinking here is that there are failures to object that are really inexcusable, and failures to object that may be not so egregious. And here you have the government, albeit after the guidelines calculation, saying that five years is sufficient. But it is a very confused area. Yes, Your Honor. I'm not sure what grounds are— Was there a guidelines calculation with respect to the 10-year term of supervised release? I'm sort of quickly trying to look at this and trying to listen at the same time, always hazardous. But it doesn't sound to me like maybe there was one, that there was a lot of talk about the sentence. And then, all right, the judge says, all right, thank you. Neither of you have mentioned the length of supervised release. It sounds like, as it often is, an afterthought. Your Honor, I believe that he made an official determination prior to any arguments by court. It probably would be several pages back in the transcript. At the time he makes the determination of the sentencing guidelines— This guy is old and sick, two things that we can all sympathize with, even if we're not quite there, right? I notice I'm out of time. You can answer that question. Yes, the defendant, you're not giving anything away with that. Thank you. Thank you. Mr. Byrne. To pick up right where Judge Motz left off, page 173 of the joint appendix is where the district court talks about the guidelines calculations and everything after there had been an objection to the guideline range and it had been resolved. It talks about the statutory penalty for supervised release being five years to life. It doesn't really mention the guideline range. And I would also— Is there any danger of a conflict here between the guidelines calculations and the statute? Of a conflict, Your Honor? Well, if— I mean, the guidelines calculations can't trump the statute. Correct. And the guideline recommendation that is in the pre-sentence report says that the guidelines recommend life because it recommends the maximum term that's available, which, of course, is completely at odds with that statute and why it was passed, which may be a reason why it was generally ignored. I don't think that plain error is an issue here. The government didn't think it was an issue when they wrote their brief. They said the standard of review for the sentencing issue was reasonableness. And I think Your Honor is correct that when the parties make an argument for a specific sentence and the judge rejects that argument and poses a higher sentence, that there's no further need to object. I'm fairly certain this Court has said that in the past. I'm not—I don't have it at the tip of my tongue right now. And I'm also told— When that happens and the parties make a recommendation for a particular sentence and then the Court imposes, notwithstanding that, a higher sentence, it makes it seem more like a variance, doesn't it? It certainly does. And, again, depending on how you read the guidelines, if you're starting from five or you're starting from life— I think as a practical matter that if we were to remand this for a review in light of what's probably the correct guidelines range of five years, that the district court would do anything differently from what it has already done, given the fact that the criminal history here is ugly. Because I think the Court would have to do that with a recognition that it was imposing the additional term that it's allowed to impose because this is a sexual offense for reasons that don't have anything to do with that. I'm not saying the judge could not do that, but I think we'd have to be more explicit about— with the exception of B2. Correct, Your Honor, with the exception of the nature of the—or the severity of the offense. I think it's the one that's excluded. Yes, Your Honor. I just wonder if there's a practical reason for this. There may be. Your point is if we have a chance to address the supervised release within the correct framework, it might be different. Yes, Your Honor. If I could turn to the conviction very quickly. The government placed some reliance on this form Mr. Collins signed in 2011 when he was arrested there in Ohio. The Ohio court later in that case told Mr. Collins that was wrong. The sheriff's deputy who told you you have to register for 25 years was wrong. He did not know about this Ohio Supreme Court case that had come down. In addition, the mention in that form to register in Wood County in Parkersburg was by a date certain. It was by—I think it was February 27th of that year. He was in custody until August. So if you're going to take that form literally, the deadline to do so had already passed. But most importantly, that form entirely discusses Ohio law. Ohio law requires you to do this. It doesn't mention federal law whatsoever. If I could go back to another thing that Judge Motz brought up when I was here initially, the page 115 of the Joint Appendix. I think to get all that in context, you have to go back to at least page 111, which was the cross-examination of that deputy marshal. When he agreed with defense counsel that the other deputy marshal was essentially telling everyone in this apartment complex we've arrested a sex offender. It was after that that Mr. Collins made comments about worrying because he's an unregistered sex offender. Well, he's just been arrested for being an unregistered sex offender. He now knows. And that's why, remember I said at the beginning, I have a certain amount of sympathy. As I look at this record, you didn't handle it below. Things might have been different, right? Who knows, Your Honor. He did spend 11 years in West Virginia, did he not, without registering when he was under an obligation to register? I don't know if it was 11 years. It was eight or nine. It was a long period of time. That's not helpful, is it? Well, we can't get around that fact, Your Honor. Thank you, Your Honors. We'll come down and recounsel and move into our next case.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Henry F. Floyd